UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

RICHARD B. MAHONEY                                                    PLAINTIFF

V.                                              CIVIL ACTION NO. 3:07CV173 DPJ-JCS

CITY OF JACKSON AND OFFICER KUTENIA BROOKS                DEFENDANTS

MEMORANDUM OPINION AND ORDER

This cause is before the Court on motion of Defendants the City of Jackson and Officer

Kutenia Brooks for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Plaintiff

Richard D. Mahoney has responded in opposition.  The Court, having considered the memoranda

and submissions of the parties, concludes that Defendants' motion should be granted in part and

denied in part, as set forth herein.

I.      Facts and Procedural History

Plaintiff Mahoney filed this action against the City of Jackson and Kutenia Brooks, a

police officer with Jackson Police Department, following his arrest on September 3, 2005.  The

parties have produced conflicting evidence as to the circumstances leading to the arrest.

Plaintiff asserts that he visited the lone abortion clinic in Jackson, Mississippi to pray,

when he was threatened by an individual wielding a knife.  The police were called, and Officer

Brooks and Officer Jerrick Taylor responded.  Ultimately, Officer Brooks arrested Plaintiff on

charges of disorderly conduct, failure to obey a police officer, and disturbing the peace.  Brooks's

field arrest report identifies the basis for the arrest as "conflict with patients and would not

disperse once instructed to do so."  However, both Officer Brooks and Officer Taylor testified

that Plaintiff was not in conflict with patients, and he was not ordered to disperse.  Instead,

Defendants now contend that Plaintiff was loud and refused to cooperate with commands to calm down and be quiet, a fact that is also disputed by competent record evidence.

In his Complaint, Plaintiff alleges that he was wrongfully arrested and prosecuted for disorderly conduct on account of, and in retaliation for, exercising his First Amendment right to protest abortions.  Mahoney seeks damages under 42 U.S.C. § 1983 for alleged violation of his rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.  He also asserts state law claims for false arrest, false imprisonment, and malicious prosecution.

II.     Analysis

A.      Summary Judgment Standard

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact.  *Id.* at 323.  The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  *Id.* at 324.  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*,

2

10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)

(en banc).  Instead, when the movant shows the absence of a genuine issue of material fact, "the

nonmovant must go beyond the pleadings and designate specific facts showing that there is a

genuine issue for trial."  *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

A simple plea for a jury trial on the bare assertion that there are genuine issues of material fact is

not a sufficient response to a motion for summary judgment.  *F.D.I.C. v. Brewer*, 823 F. Supp.

1341, 1347 (S.D. Miss. 1993) (citing *Washington v. Armstrong World Indus., Inc.*, 839 F.3d

1121, 1122–23 (5th Cir. 1988)).

In reviewing the evidence, factual controversies are to be resolved in favor of the

nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts."

*Little*, 37 F.3d at 1075.  When such contradictory facts exist, the court may "not make credibility

determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods. Inc*., 530 U.S.

133, 150 (2000).

B.      Section 1983 Claims Against the City of Jackson

Municipalities, such as the city, are subject to § 1983 liability "when execution of a

government's policy or custom, whether made by its lawmakers or by those whose edicts or acts

may fairly be said to represent official policy, inflicts the injury . . . ."  *Monell v. Dep't of Soc.*

*Servs.*, 436 U.S. 658, 694 (1978).  Municipal liability under § 1983 requires proof of 1) a

policymaker; 2) an official policy; and 3) a violation of constitutional rights whose "moving

force" is the policy or custom.  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)

(citing *Monell*, 436 U.S. at 694).  "Municipal liability cannot be sustained under a theory of

respondeat superior.  [Rather,] the unconstitutional conduct must be directly attributable to the

municipality through some sort of official action or imprimatur; isolated unconstitutional actions

by municipal employees will almost never trigger liability." *Rivera v. Houston Indep. Sch. Dist.*,

349 F.3d 244, 247 (5th Cir. 2003) (internal citations and quotations omitted).

        1.      Policymaker

To sustain liability under § 1983, Plaintiff must point to more than the actions of Officer

Brooks, he "must identify a policymaker with final policymaking authority . . . ." *Id.*; *see also*

*Bowles v. Cheek*, 44 F. App'x 651, 2002 WL 1396929, at *1 (5th Cir. 2002) (affirming summary

judgment where plaintiff failed to establish existence of a policymaker whose official policy was

the moving force behind alleged violation); *Piotrowski*, 237 F.3d at 578-79 (noting that

identification of policymaker who could be held responsible "is not an opaque requirement").  In

this case, Plaintiff has not identified a policymaker.

        2.      Official Policy

In the absence of any disputed ordinances, policy statements, or regulations, Plaintiff

attempts to establish a policy or custom through proof of "[a] persistent, widespread practice of

city officials or employees, which, although not authorized by officially adopted and promulgated

policy, is so common and well settled as to constitute a custom that fairly represents municipal

policy." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984).  "An act performed

pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may

fairly subject a municipality to liability on the theory that the relevant practice is so widespread

as to have the force of law." *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005) (internal

citation omitted).

Here, Plaintiff alleges that the following alleged incidents establish that the City of Jackson has a custom of discriminating against pro-life advocates:  1) pro-life protestors are told to remain on the sidewalk and "keep moving," while supporters are permitted "free use (i.e., walking or parking motor vehicle on) of 'public servitude' (rights-of-way where there is no sidewalk) when approaching or leaving the abortion clinic"; 2) two lawsuits were successfully filed against the city by pro-life supporters in 2004; 3) customers of the clinic are allowed to park illegally, while protestors are given parking tickets; 4) alleged harassment by police of protestors during a July 2006 demonstration; 5) officers threatened to arrest Plaintiff September 17, 2005 for having a video camera outside the clinic; 6) officers threatened to arrest Plaintiff for standing next to the clinic, but patients and employees of the clinic were allowed to do so; 7) officers threatened to arrest Plaintiff for asking an officer why patients could park on the grass, but he could not stand on it; 8) officers threatened to arrest Plaintiff for stopping in front of the clinic in a vehicle with pro-life pictures and slogans, while patients and drug company representatives are allowed to stop without being threatened; and 9) the city failed to follow through on his complaint against the man who threatened him with a knife.

Whether these events amounted to a widespread practice *at the time of the event* is questionable.  Nevertheless, Defendants' primary argument against the existence of a pattern is that Plaintiff's evidence is not competent.  First, Defendants contend that the Court should disregard Plaintiff's affidavit statements that relate to subjects discussed during his deposition.  However, "[w]hen an affidavit merely supplements rather than contradicts prior testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment."  *Bush v. Strain*, 513 F.3d 492, 500 (5th Cir. 2008) (citation and internal ellipsis

omitted).  In this case, it does not appear that Plaintiff contradicted sworn testimony relevant to this issue.  And, while Plaintiff's affidavit contains some hearsay and speculation regarding events before the arrest, the testimony appears sufficient to raise a question as to the occurrence of those incidents he personally observed.  The Court must also reject Defendants' general attacks on the affidavit of Layne Turner.  First, contrary to Defendants' argument, it appears as though the affidavit was notarized, and even if it was not, the affidavit substantially complies with 28 U.S.C. § 1746 (allowing unsworn declarations under penalty of perjury).  Second, Defendants fail to establish that this witness will not be available for trial.  Based strictly on Defendants' arguments, the Court would find a question of fact with respect to the existence of a widespread practice.  This singular finding does not, however, fully satisfy the second essential element.

Even assuming a custom, Plaintiff must still show that a policymaker had actual or constructive knowledge of it. *Cox*, 430 F.3d at 749.  "Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority."  *Webster*, 735 F.2d at 841.

In this case, there is no proof of actual knowledge on the part of the policymaker (whomever that may be).  Thus, Plaintiff attempts to show constructive knowledge.  According to the Fifth Circuit Court of Appeals, a distinction exists between the proof necessary to show a customary policy and proof of constructive knowledge of such a policy.  *Pineda v. City of Houston*, 291 F.3d 325, 330 (5th Cir. 2002).  "A pattern may exist without actual or constructive knowledge because the facts of the events are concealed from policymakers.  However, the sheer numerosity of incidents can provide evidence of constructive knowledge."  *Id*.  In this regard,

6

> "[c]onstructive knowledge may be attributed to the governing body on the ground
> that it would have known of the violations if it had properly exercised its
> responsibilities, as for example, where the violations were so persistent and
> widespread that they were the subject of prolonged public discussion or of a high
> degree of publicity."

*Webster*, 735 F.2d at 842 (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984)).

Looking to Plaintiff's proof in this case, it appears that many of the incidents upon which

he relies occurred during or after the subject arrest, neither of which demonstrate constructive

knowledge.  *Cano v. Bexar County, Tex.*, No. 07-50921, 2008 WL 2329203, at *2 (5th Cir. June

4, 2008) ("[I]nvestigations subsequent to the instant incident are not relevant because such

incidents could not have informed [defendant] with respect to the instant claim."  (citation

omitted)).

It should first be noted that Plaintiff has recounted these incidents in response to

interrogatories, in his deposition testimony, and in his affidavit.  Of the nine (9) incidents he lists,

only the two prior lawsuits have a specific, pre-arrest date.  As for the remaining eight (8)

incidents, the record is either silent as to the date of alleged occurrence or it establishes that the

incidents occurred after the subject arrest on September 3, 2005.  For instance, Plaintiff cites

alleged harassment of protestors in September 2006, the camcorder incident on September 17,

2005, and the alleged failure to prosecute the man with the knife.  All of these events post-date

Plaintiff's arrest.  In addition, the more general complaints, such as the threats to arrest Plaintiff,

seem consistent with his deposition testimony that "[s]ince then [September 3, 2005] they've

been harassing me.  Say, 'If you say a word to me I'm going to arrest you.'"  Mahoney Dep. at

73.  He further testified that "[s]ince this incident with Officer Brooks, I've been traumatized in

so many different ways."  *Id*. at 76; *see also id*. at 73-75 (*appearing* to suggest that parking issue

and use of public areas occurred after his arrest).  Ultimately though, the record fails to reflect

that any of these other incidents occurred before the arrest.  This leaves the two lawsuits for

which Plaintiff testified "I know nothing about that . . . ."  *Id*. at 96.  Indeed, Plaintiff mentions

the two lawsuits, by name only, but he fails to demonstrate that these suits are sufficiently similar

to place the policymaker on notice of this alleged custom.

In sum, Plaintiff's effort to show constructive knowledge fails for lack of proof.

Nowhere in the record has Plaintiff demonstrated that any policymaker knew or should have

known of this alleged custom.  There is no evidence demonstrating a pre-arrest pattern so

widespread as to generate anything akin to "prolonged public discussion" or a "high degree of

publicity."  *Webster*, 735 F.2d at 842.  Accordingly, the Court finds that even if a pattern existed,

Plaintiff has failed to show that a policymaker had constructive knowledge of the pattern.

3.      Moving Force

There must also be a direct causal link between the municipal policy and the

constitutional deprivation.  *Piotrowski*, 237 F.3d at 580.  "*Monell* describes the high threshold of

proof by stating that the policy must be the 'moving force' behind the violation."  *Id.*  (citing

*Monell*, 436 U.S. at 694); *see also generally City of Oklahoma v. Tuttle*, 471 U.S. 808 (1985)

(applying *Monell*).

> "A *direct* causal connection must exist between the policy and the alleged
> constitutional deprivation.  This connection *must be more than a mere 'but for'*
> *coupling* between cause and effect.  To form the basis of liability under § 1983, a
> municipal policy must be affirmatively linked to the constitutional violation and
> be the *moving force* behind it."

*Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 310 (5th Cir.

2004) (quoting *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992)) (emphasis in

*Johnson*).

> On the issue of "moving force," Plaintiff states in his response:
>
> Mahoney's mistreatment at the hands of Officer Brooks was, therefore, just one more example of the City's practice and custom of discrimination against and deliberate indifference to the rights of against [sic] pro-life activists.  Accordingly, plaintiff has established the "affirmative link between the policy and the particular constitutional violation alleged" as required by *Tuttle*.  *Tuttle*, 471 U.S. at 823.

In other words, Plaintiff asks the Court to infer from the alleged pattern that Officer Brooks acted

in accordance with it.  The Court finds this argument lacking.  Plaintiff must show "'specific

facts' showing a genuine factual issue for trial.  Conclusional allegations and denials,

speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation" are

not sufficient.  *Sedgwick James of Wash.*, 276 F.3d at 759 (citations omitted).  In the context of

municipal liability under § 1983, "rigorous standards of culpability and causation must be

applied to ensure that the municipality is not held liable solely for the actions of its employee."

*Bryan County v. Brown*, 520 U.S. 397, 405 (1997).  "[A] court must carefully test the link

between the policymaker's inadequate decision and the particular injury alleged."  *Id.* at 410.

Accordingly, "case law generally requires a close nexus between the policy maker's decision and

the constitutional violation."  *De Angelis v. City of El Paso*, 265 F.App'x 390, 394 (5th Cir.

2008).  The record before the Court simply fails to demonstrate a question of fact on the issue of

whether the alleged policy was the "moving force" behind Plaintiff's arrest.[1]

---

[1] The record contains evidence of another possible motive–gender.  Plaintiff states in his response that "[w]hat clearly upset Officer Brooks was that to her '[i]t appeared as though [Mr. Mahoney] did not want to be given orders or questioned by a woman . . . .'"  Plaintiff's Response

4.      Failure to Train/Supervise Claim[2]

Plaintiff claims that the City of Jackson had a custom of inadequately training and/or supervising its officers as to the rights of pro-life demonstrators, but his argument focuses on a perceived lack of training.  As noted in *City of Canton, Ohio v. Harris*, "there are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983."  489 U.S. 378, 387 (1989).  In order to establish such liability, plaintiffs must show 1) inadequate training procedures; 2) inadequate training caused the alleged false arrest; and 3) deliberate indifference of municipal policymakers.  *Pineda*, 291 F.3d at 331-32.

In *City of Canton*, the Court further noted:

> In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.  . . . Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct.

489 U. S. At 390-91 (footnote and citations omitted) (adopting "deliberate indifference" standard in § 1983 failure to train cases).

---

at 8; *see also id.* at Ex. B, D, and E.  In addition, Plaintiff claims that two other officers arrived at the scene and questioned Officer Brooks's handling of the incident.  Turner Aff. ¶13.  This evidence further suggests that Officer Brooks was not acting pursuant to a widespread practice "so common and well settled as to constitute a custom" within the department that was the "moving force" behind her actions.  *Pineda*, 291 F.3d at 328.  Defendants did not make these arguments, and they are not necessary for the Court's ruling.

[2] As Defendants observe, this claim is not specifically plead as a separate count in Plaintiff's Complaint.  However, the alleged failure to train is reflected in other portions of the Complaint, and giving Plaintiff the benefit of notice pleading, the Court will consider whether he has otherwise supported a training/supervision claim under § 1983.

Plaintiff premises his failure to train claim on the testimony of Officers Taylor and Brooks that they received training on First Amendment rights *after* the subject arrest.  Plaintiff suggests from this that neither received any training before the incident.  The actual testimony paints a different picture.  Both officers testified that they were instructed on First Amendment rights during their initial training at the Police Academy.  *See* Brooks Dep. at 17-20; Taylor Dep. at 8.  Although Officer Brooks could not recall the details of that training, Taylor testified that the academy covered questions of probable cause, First Amendment rights, and the idea that "everyone has the right to gather and has freedom of speech and to protest on public sidewalks, as long as it's peaceful."  Taylor Dep. at 8.  Taylor further testified that he understood from this pre-incident training that First Amendment activities included such things as carrying signs, praying, non-violent picket lines, and handing out literature.  *Id*. at 9.  He even testified that Plaintiff's specific protests the day of the arrest fell within the scope of the training he received.  *Id*. at 66.  Thus, the sole factual basis for Plaintiff's failure to train argument is not supported in the record.[3]

Viewing the actual record in light of the essential elements, the Court concludes that Plaintiff has failed to create a jury question on this issue.  First, it is not apparent from the record that the training was inadequate because training did occur, and Plaintiff fails to "allege with specificity how [the] particular training program is defective."  *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) (citing *Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir.

_____

[3]  Brooks's less specific recollection of the initial training does not demonstrate a policy of failing to train.  *See Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998) ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." (quoting *City of Canton*, 489 U.S. at 390-91)).

1992)).  Second, like his other § 1983 claims, Plaintiff has failed to identify an individual with

policy-making authority who can be attributed with knowledge of the alleged shortcoming.  *See*

*Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003) ("The knowledge requirement

applies with equal force where a section 1983 claim is premised on a failure to train or to act

affirmatively.").  Third, the factual disparity in Plaintiff's response undercuts the necessary proof

of causation because the officers were aware of Plaintiff's rights.  *See Snyder*, 142 F.3d at 799

(concluding that § 1983 failure to train claims require "'moving force' causation").

Finally, even assuming Plaintiff has shown that inadequate procedures caused his arrest,

he has failed to demonstrate deliberate indifference.  "Deliberate indifference is a stringent

standard of fault."  *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375,

381-82 (5th Cir. 2005) (citing *Bryan County*, 520 U.S. at 410).  In *Snyder*, the Fifth Circuit

described this standard as follows:  "that the inadequacy be 'so obvious' and 'so likely to result

in the violation of constitutional rights,' that the city can be said to have been deliberately

indifferent."  142 F.3d at 799 (quoting *City of Canton*, 489 U.S. at 390).  In other words, Plaintiff

must show that the city or its policymaker made a "'deliberate' or 'conscious' choice to endanger

constitutional rights."  *Id*.  (citing *City of Canton*, 489 U.S. at 389).  "A mere showing of

generalized risk is insufficient to establish deliberate indifference; rather the plaintiff must show

that a reasonable policy maker would conclude that the rights deprivation that occurred was a

'plainly obvious consequence' of his decision."  *Estate of Davis*, 406 F.3d at 381-82 (citations

omitted).

Even if the Court could accept that the pre-arrest incidents formed a pattern, Plaintiff has

not demonstrated that the city or a policymaker would have known of the incidents alleged to

have occurred before the subject arrest or that the First Amendment training provided at the

Policy Academy was inadequate for the task of responding to pro-life demonstrators.  *See

Roberts*, 397 F.3d at 294 (noting that plaintiff failed to prove policymaker was on notice of

officer's propensity to use excessive force); *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir.

1998) ("For an official to act with deliberate indifference, 'the official must both be aware of

facts from which the inference could be drawn that a substantial risk of serious harm exists, and

he must also draw the inference.'" (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994);

*Wilson v. Seiter*, 501 U.S. 294 (1991))).  Finally, the record lacks a sufficient basis for finding

that the "failure to train reflects a "deliberate" or "conscious" choice to endanger constitutional

rights."  *Estate of Davis*, 406 F.3d at 383 (quoting *Snyder*, 142 F.3d at 799).

Based on the foregoing, the Court finds that Plaintiff has failed in his burden to prove the

elements necessary to establish municipal liability.  The § 1983 claims against the City of

Jackson should be dismissed.

C.      Officer Brooks's Entitlement to Qualified Immunity

"Qualified immunity shields government officials performing discretionary functions

from civil liability so long as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known."  *Huang v. Harris County*,

264 F.3d 1141, 2001 WL 822534, at *5 (5th Cir. 2001) (citing *Bazan v. Hidalgo County*, 246

F.3d 481, 488 (5th Cir. 2001)).  "[The] court applies a two-step analysis to determine whether a

defendant is entitled to summary judgment on the basis of qualified immunity.  First, [the court]

determine[s] whether, viewing the summary judgment evidence in the light most favorable to the

plaintiff, the defendant violated the plaintiff's constitutional rights."  *Freeman v. Gore*, 483 F.3d

13

404, 410 (5th Cir. 2007) (citations omitted); *see also Scott v. Harris*, 127 S. Ct. 1769, 1774

(2007).  "If the defendant's conduct did not violate [the] plaintiff's constitutional rights under the

first prong, . . . he is entitled to qualified immunity."  *Blackwell v. Laque*, No. 07-30184, 2008

WL 1848119, at *2 (5th Cir. Apr. 24, 2008).  If the first prong is satisfied, however, the court

> next considers whether the defendant's actions were objectively unreasonable in
> light of clearly established law at the time of the conduct in question.  To make
> this determination, the court applies an objective standard based on the viewpoint
> of a reasonable official in light of the information then available to the defendant
> and the law that was clearly established at the time of the defendant's actions.

*Freeman*, 483 F.3d at 411.  "Once a defendant asserts a qualified immunity defense, the burden

shifts to the plaintiff to show that the defense is inapplicable."  *Blackwell*, 2008 WL 1848119, at

*2 (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

Under the qualified immunity standard set out above, the Court must first determine

whether, viewing the summary judgment evidence in the light most favorable to Plaintiff, Officer

Brooks violated Plaintiff's constitutional rights.  In his Complaint, Plaintiff alleges that Officer

Brooks violated his First, Fourth, and Fourteenth Amendment rights.  Specifically, he claims he

was falsely arrested and prosecuted because of, or in retaliation for, exercising his right to protest

abortion.

A claim of false arrest requires a showing of no probable cause.  *Brown v. Lyford*, 243

F.3d 185, 189 (5th Cir. 2001).  "The Supreme Court has defined probable cause as the 'facts and

circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or

one of reasonable caution, in believing, in the circumstances shown, that the suspect has

committed, is committing, or is about to commit an offense.'"  *Piazza v. Mayne*, 217 F.3d 239,

245-46 (5th Cir. 2000) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).

At the summary judgment stage, the Court is obligated to consider the facts in the light most favorable to Plaintiff.  As stated earlier, Officer Brooks indicated on the field arrest report that Plaintiff was arrested due to "conflict with patients and would not disperse once instructed to do so."  In stark contrast to this report, both Officer Taylor and Officer Brooks testified that Plaintiff was not in conflict with patients, and he was not told to disperse.  Instead, Officer Brooks now maintains that Mahoney was arrested because he was yelling and would not be quiet.  Mahoney has presented competent record evidence to dispute this new basis for the arrest through his own affidavit and deposition testimony and the affidavit of Layne Turner, a witness to the exchange.  As such, the Court finds that the circumstances surrounding Plaintiff's arrest create a question of fact as to whether Officer Brooks violated Plaintiff's constitutional rights.

Finally, the Court further finds a question of fact with respect to the objective reasonableness of Officer Brooks's actions.  "The right to be free from arrest without probable cause is a clearly established constitutional right."  *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994).  And, the facts detailed above, when viewed in a light most favorable to Plaintiff, could support a finding that no probable cause existed for the arrest.

D.      Plaintiff's State Law Claims

1.      Notice of Claim Requirements

Plaintiff has asserted state law claims against Defendants for false arrest and imprisonment and malicious prosecution.  To pursue such claims, he must first comply with the notice requirements of the Mississippi Tort Claims Act (MTCA).  The MTCA notice statute provides:

15

> Every notice of claim required by subsection (1) of this section shall be in writing, and shall be delivered in person or by registered or certified United States mail. Every notice of claim shall contain a short and plain statement of the facts upon which the claim is based, including the circumstances which brought about the injury, the extent of the injury, the time and place the injury occurred, the names of all persons known to be involved, the amount of money damages sought and the residence of the person making the claim at the time of the injury and at the time of filing the notice.

MISS. CODE ANN. § 11-46-11(2) (Rev. 2002).

Thus, there are seven required categories of information: (1) the circumstances which brought about the injury; (2) the extent of the injury; (3) the time and place the injury occurred; (4) the names of all persons known to be involved; (5) the amount of money damages sought; (6) the residence of the person making the claim at the time of the injury; and (7) the claimant's residence at the time of filing the notice. *S. Cent. Reg'l Med. Ctr. v. Guffy*, 930 So. 2d 1252, 1257 (Miss. 2006); *see also* MISS. CODE ANN. § 11-46-11(2).

> With respect to the seven required categories of information, the failure to provide any one of the seven categories is failure to comply. Thus, the term "substantial compliance" *in this context* is rendered meaningless. Either the written notice complied with Miss. Code Ann. § 11-46-11(2) by disclosing all seven required categories of information, or it did not comply with the statute by failing to disclose all seven required categories of information.
> . . .
>
> The confusion has arisen in the discussion of Miss. Code Ann. § 11-46-11(2), as to how much information is required by this Court under each of the seven categories to comply with Miss. Code Ann. § 11-46-11(2). As a practical example, the first category requires notice of the "circumstances which brought about the injury." In order to comply with this requirement, the notice need not disclose every single fact, figure and detail, but rather the substantial details, in order to comply with the requirements of Miss. Code Ann. § 11-46-11(2). But, the failure to provide *any* of the seven statutorily required categories of information falls short of the statutory requirement and amounts to non-compliance with Miss. Code Ann. § 11-46-11(2). However, where some information in each of the seven required categories is provided, this Court must determine whether the information is "substantial" enough to be in compliance

16

> with the statute. If it is, the result is "compliance," not "substantial compliance"
> with the requirements under Miss. Code Ann. § 11-46-11(2).

*Guffy*, 930 So. 2d at 1258.

Defendants assert that Plaintiff failed to provide all seven categories of information, specifically the names and addresses of all persons known to be involved, the nature and extent of his injuries, and the exact time and place of his injuries.  The Court disagrees.  Plaintiff's notice provided his name and address and that of Officer Brooks, the arresting officer; the notice stated that Plaintiff suffered emotional distress and anguish over the arrest; and it specified that Plaintiff was arrested on the morning of September 3, 2005 and taken to the Jackson Police Station and the city jail.  Following the guidance provided by *Guffy*, the Court finds that Plaintiff has provided substantial information as to all seven required categories.  *Id.*

2.     State Law Claims Against City of Jackson and Officer Brooks

To pursue his claims of false arrest and imprisonment and malicious prosecution, Plaintiff must first navigate the various exclusions to the limited waiver of sovereign immunity found in the MTCA.

a.     *Outside the Course and Scope of Employment*

The state has not waived sovereign immunity for municipalities when their employees act beyond the course and scope of employment.  Miss. Code Ann. § 11-46-7(2).  The MTCA provides:

> An employee may be joined in an action against a governmental entity in a
> representative capacity if the act or omission complained of is one for which the
> governmental entity may be liable, but no employee shall be held personally liable
> for acts or omissions occurring within the course and scope of the employee's
> duties.  For the purposes of this chapter an employee shall not be considered as
> acting within the course and scope of his employment and a governmental entity

> shall not be liable or be considered to have waived immunity for any conduct of
> its employee if the employee's conduct constituted fraud, malice, libel, slander,
> defamation or any criminal offense.

*Id.* Accordingly, if Officer Brooks acted within the course and scope of her employment, then she would be immune from personal liability, but the city could be held liable, subject to certain exceptions addressed *infra*. *Craddock v. Hicks*, 314 F. Supp. 2d 648, 654 (N.D. Miss. 2003). Conversely, if Officer Brooks acted outside the course and scope of employment, then she could be held personally liable, but the city would be immune. *Id.*

On this issue, Defendants try to have it both ways. First, they assert that because the Complaint specifically alleges that Officer Brooks acted with malice, the city remains immune. *See generally City of Jackson v. Powell*, 917 So. 2d 59 (Miss. 2005) (finding no municipal liability for officer's malicious conduct); *Robinson v. Hosemann*, 918 So. 2d 668 (Miss. 2005) (finding no municipal liability when plaintiff specifically alleged acts outside the scope of employment). Conversely, Defendants argue that there is no proof of malice, and therefore, Brooks is personally immune too. *Jenkins v. Gray*, No. 3:05cv608 HTW-LRA, 2008 WL 2374252, at *4 (S.D. Miss. June 5, 2008) (dismissing state law claims against officer because plaintiff failed to allege facts demonstrating officer's fraud, malice, libel, etc.); *see generally Mallery v. Taylor*, 805 So. 2d 613 (Miss. Ct. App. 2002) (holding employee immune from personal liability when complaint alleged conduct in the course and scope of employment and no evidence was presented establishing fraud, malice, libel, etc.).

The city is obviously walking a fine line here in an effort to avoid conflict with its officer, and it has limited the argument for municipal immunity to the factual averments in Plaintiff's Complaint that Brooks acted with malice. However, the Sixth and Seventh Counts of the

18

Complaint aver that Brooks "was acting within the scope of her employment."  The Court finds that the city cannot claim immunity based on the malice averments, while ignoring the alternative averment that Brooks acted within the course and scope of employment.[4]  Moreover, the facts discussed above present a jury question as to whether Officer Brooks acted within the course and scope of her employment.  Therefore, summary judgment is not appropriate as to Plaintiff's state claims against the City pursuant to § 11-46-7(2).

With respect to the state law claims against Officer Brooks in her individual capacity, it is not clear to the Court whether Plaintiff actually contests the motion for summary judgment.  For its part, the City seems reluctant to prove Brooks acted within the course and scope of employment, as it would create potential liability for the City.  Accordingly, the Court will withhold ruling on this portion of the motion for summary judgment and will discuss the issue with counsel at the pre-trial conference.

---

[4] Rule 8 of the Federal Rules of Civil Procedure provides in pertinent part as follows:

(d)(2) Alternative Statements of a Claim or Defense.  A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

(3) Inconsistent Claims or Defenses.  A party may state as many separate claims or defenses as it has, regardless of consistency.

(e) Construing Pleadings.  Pleadings must be construed so as to do justice.

"Until an action has actually reached the point of entering a judgment, Rule 8 allows a plaintiff to explore alternative, mutually exclusive theories."  *Laurence v. Atzenhoffer Chevrolet*, 281 F. Supp. 2d 898, 900 (S.D. Tex. 2003).

*b.  Within the Course and Scope of Employment*

Defendants alternatively argue that if Officer Brooks acted within the course and scope of her employment, then both Defendants are exempt from liability under the police and fire protection provision of the MTCA.  MISS. CODE ANN. § 11-46-9(1)(c).  Under this exemption, a governmental entity and its employees may be held liable for an employee's actions within the scope of employment if the employee "acted in reckless disregard for the safety and well-being of any person not engaged in criminal activity at the time of the injury."  *Id.*  "Reckless disregard" has been described by the Mississippi Supreme Court as "a higher standard than gross negligence [that] 'embraces willful or wanton conduct[,] which requires knowingly and intentionally doing a thing or wrongful act.'"  *City of Jackson v. Powell*,  917 So. 2d 59, 71 (Miss. 2005) (citations omitted).  Thus, under this exception, there are two questions: 1) was Mahoney engaged in criminal activity at the time the injury, and if he was not, 2) did Officer Brooks act in reckless disregard for his safety?

The Court finds that the facts detailed above create questions of fact as to whether Plaintiff (who was acquitted of all charges) was engaged in criminal activity at the time of his alleged false arrest and as to whether Officer Brooks acted in "reckless disregard."  *See Shelton v. City of Laurel*, NO. 2:06cv111 DCB-MTP, 2007 WL 1141501, at *7 (S.D. Miss. Apr. 17, 2007) (considering assault claim in context of police protection exemption and finding when facts underlying criminal charge were disputed, question of fact existed as to whether the plaintiff was engaged in criminal activity at the time of his injury); *Green v Copiah County*, No. 3:03cv1388 WS, 2006 WL 2827698, at *6 (S.D. Miss. Sept. 30, 2006) (finding that questions of fact as to whether the defendant deputy's conduct was discretionary and/or constituted reckless disregard

precluded summary judgment under the discretionary and police protection exemptions); *Foster v. Noel*, 715 So. 2d 174, 179 (Miss. 1998) (finding officer's failure to investigate before obtaining a warrant for plaintiff's arrest constituted reckless disregard). As such, summary judgment on Plaintiff's state law claims based on the fire and police protection exception to the MTCA is inappropriate.

Finally, Defendants argue that they are immune pursuant to the exemption for discretionary functions. That provision of the MTCA provides that municipalities and their employees are not liable for actions taken within the course and scope of employment "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused." MISS. CODE ANN. § 11-46-9(1)(d). Defendants claim the arrest was a discretionary function.

Judge Tom S. Lee rejected this argument, along with the police protection argument discussed above, in *Spencer v. City of Jackson*, 511 F. Supp. 2d 671, 675 (S.D. Miss. 2007) and *McGregory v. City of Jackson*, 504 F. Supp. 2d 143, 147 (S.D. Miss. 2007). In *Spencer*, the plaintiffs sued the defendants for excessive force, false arrest, and false imprisonment, among other things. The court, faced with conflicting versions of the events surrounding the arrests, denied a motion to dismiss and observed:

> To accept the facts alleged by plaintiff means to accept that the officers, although engaged in activities relating to police protection, acted in reckless disregard of plaintiff and her daughters' safety and well being. Likewise, assuming that the officers had no arguable reason to believe plaintiff or her daughters were properly subject to arrest or detention and had no arguable basis for using force against them, then there would be no immunity under the discretionary function exception to the MTCA's waiver of immunity. The court simply cannot conclude in the

> context of the present motion to dismiss, i.e., on the basis of the facts alleged by
> plaintiff, that defendants are immune under the MTCA.

*Spencer*, 511 F. Supp. 2d at 675; *see also McGregory*, 504 F. Supp. 2d at 146 ("[I]f, as plaintiffs

allege, the officers had no arguable basis for concluding they had probable cause to arrest [one

plaintiff], [then] it would seem they had no discretion to arrest him . . . ."); *Green*, 2006 WL

2827698.  Granted, the issue here is raised in a motion for summary judgment, but when both

parties have submitted evidence of contradictory facts, the controversy must be resolved in favor

of the nonmovant.  *Little*, 37 F.3d at 1075.  The parties have submitted conflicting evidence, and

hence, Defendants' motion for summary judgment based on the discretionary function exception

must also be denied.[5]

     E.     Damages

     Lastly, Defendants claim that this case should be dismissed arguing that damages are an

essential element, and Plaintiff failed to prove physical, psychological, emotional or actual

pecuniary injury.  Defendants' motion should be denied for the following reasons.

     First, Defendants, citing *Cranford v. Compton*, claim that under "federal law," emotional

distress damages are not available absent physical injury.  Civil Action No. 1:04cv783 LG-JMR,

2006 WL 2805348, at *7 (S.D. Miss. Sept. 5, 2006).  However, *Cranford* was brought under the

Prison Litigation Reform Act which "requires that a physical injury, suffered while in custody,

---

     [5] In addition, Defendants argue that Officer Brooks cannot be held liable in her official
capacity because she is entitled to qualified immunity, relying on *Blake v. Wilson*, 962 So. 2d 705
(Miss. 2007).  It appears that the court in *Blake* applied the qualified immunity analysis to § 1983
claims, not claims under the MTCA.  "Immunity Under the MTCA" and "Qualified Immunity"
are separate portions of the opinion.  *Blake*, 962 So. 2d at 711-13.  In addition, *Blake* cited *Harris
v. Mississippi Valley State University*, 873 So. 2d 970, 979 (Miss. 2004), for the two-part test for
qualified immunity, and *Harris* clearly applied that test to § 1983 claims.

must be shown in order for a prisoner to commence a federal civil action for mental or emotional injuries." *Id.* (citing 42 U.S.C. § 1997e(e))*; see also Mayfield v. Tex. Dep't of Criminal Justice*, 529 F.3d 599, 605 (5th Cir. 2008). There is no suggestion, however, that this claim falls under the act. Even if it did, Plaintiff testified that the handcuffs injured his wrists.

Second, Defendants concede in rebuttal that Plaintiff may have lost wages for one day and that nominal damages could result from alleged constitutional violations. *See Williams v. Kaufman County*, 352 F.3d 994, 1014 (5th Cir. 2003) ("The law is well-establish in this Circuit that plaintiffs may recover nominal damages when their constitutional rights have been violated but they are unable to prove actual injury."); *see also  Fyfe v. Curlee*, 902 F.2d 401, 406 (5th Cir. 1990) (awarding nominal damages for a violation constitutional rights) (citing *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 n.11 (1986)). So too, "a punitive award may stand in the absence of actual damages where there has been a constitutional violation . . . when the defendant's conduct is motivated by evil intent or demonstrates reckless or callous indifference to a person's constitutional rights." *Williams*, 352 F.3d at 1015 (internal citations and quotations omitted). As such, Defendant's motion for summary judgment on this ground is denied.

III.    Conclusion

In sum, the Court finds Defendants' motion should be granted as to § 1983 claims against the City of Jackson, denied as to state law claims against the City of Jackson, and denied as to § 1983 claims against Officer Brooks in her individual capacity.

**SO ORDERED AND ADJUDGED** this the 25th day of July, 2008.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

23